UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DARREN STRIBLING,<br>    Plaintiff,<br>v.<br><br>HEIDI WASHINGTON and JODI<br>L. DEANGELO,<br>    Defendants.<br>_____/ | Case No.: 20-12990<br><br>Judith E. Levy<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 22)**

I. **PROCEDURAL HISTORY**

Plaintiff Darren Stribling filed this civil rights matter, *pro se*, on October 30, 2020, against Heidi Washington, director of the Michigan Department of Corrections, and Jodi L. DeAngelo, warden at the Ryan Correctional Facility, (collectively, the "Defendants"). (ECF No. 1). Stribling alleges the Michigan Department of Corrections' ("MDOC") announcement regarding the closure of the Ryan Correctional Facility and the subsequent transfer of the dialysis unit and affected patients to the Woodland Correctional Center Facility, absent a transfer plan for inmates in need of dialysis, was a violation of the Eighth Amendment. (ECF No. 1, PageID.4). On March 15, 2021, the Defendants filed a motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies

and Defendants' entitlement to immunity under the Eleventh Amendment. (ECF No. 22). Plaintiff filed a response on May 12, 2021 (ECF No. 25) and an affidavit on June 21, 2021 (ECF No. 27). This case has been referred to the undersigned for all pretrial matters. (ECF No. 28).

For the reasons set forth below, the undersigned **RECOMMENDS** Defendants' motion for summary judgment be **DENIED**.

**II.    BACKGROUND**

    A.    Complaint Allegations

Plaintiff contends the announcement of the impending closure of the Ryan Correctional Facility ("RC") and relocation of the inmates to the Woodland Center Correctional Facility ("WCC") without a transfer plan for inmates in need of dialysis ("pertinent inmates") was a violation of said inmates' Eighth Amendment right "not to have their serious medical needs treated with deliberate indifference." (ECF No. 1, PageID.5, 7). The announcement was included in Defendant Washington's September 22, 2020 memorandum. (*Id.* at PageID.5, 19).

In his complaint, Plaintiff outlines a number of requirements he contends are necessary to outline in the transfer plan and implement including, but not limited to, the following:

    (i)    all pertinent inmates should be screened by a registered nurse according to policy (ECF No. 1, PageID.9);

2

  (ii)  ensure pertinent inmates who are receiving or are scheduled for radiation therapy or chemotherapy remain near a therapy site and the transfer not interfere, delay, or prevent their treatment (*id.* at PageID.10); and

  (iii)  requirement in transfer plan that WCC have adequate staffing to accommodate the incoming pertinent inmates (*id.* at PageID.10).

Plaintiff also alleges WCC has an insufficient quantity of dialysis machines and further expressed concern regarding the well water system which was allegedly known to contain "high levels of arsenic, iron, calcium and other harmful minerals at [WCC]." (*Id.* at PageID.11, 12).

  B.  <u>Instant Motion for Summary Judgment</u>

  Defendants argue this case should be dismissed as Plaintiff failed to exhaust the MDOC administrative grievance process prior to filing his complaint and because Defendants are entitled to Eleventh Amendment immunity. (ECF No.22, PageID.119-21). Plaintiff countered he satisfied his obligation to exhaust the grievance process as MDOC rejected his Step I grievance and deemed the issue raised "non-grievable." (ECF No. 25, PageID.155). In regard to the Eleventh Amendment immunity defense, Plaintiff argues Defendants are not entitled to immunity as a party "must be willing to concede to the facts as alleged by the Plaintiff" and a genuine dispute as to material facts remain. (*Id.* at PageID.162).

3

## III. DISCUSSION

    A.    <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."

*Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a

party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

B.  Exhaustion under the PLRA

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . ."). However, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

7

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* As such, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

C. Grievance Procedures at MDOC

Pursuant to Policy Directive 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue. (ECF 22-2, PageID.129, at ¶ Q). If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.*). The inmate should receive a response at Step I within 15 business days of filing the grievance. (*Id.* at PageID.130, at ¶ Z).

If the inmate is dissatisfied with the Step I disposition, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form. (*Id.* at PageID.131, ¶ DD). As with Step I, the inmate should receive the Step II response within 15 business days. (*Id.* at ¶ EE). Similarly, if the inmate is dissatisfied with the Step II response or does not

receive a response by ten business days after the due date, the inmate may file a Step III grievance. (*Id.* at PageID.132, ¶ HH). The matter is fully exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

Nevertheless, prevailing circuit jurisprudence has determined that prisoners "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Blackburn v. Whitmer*, 2021 WL 248686, at *3 (E.D. Mich. Jan. 26, 2021) (citing *People v. Bauman*, 2017 WL 7050280, at *4 (6th Cir. Sept. 5, 2017) (quoting *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004))). According to MDOC 03.02.130, complaints regarding the "<u>content</u> of [a] policy or procedure" are non-grievable and shall be rejected accordingly unless the complaint challenges how the policy was specifically applied to the grievant. *Id.*; (ECF No.22-2, PageID.127, ¶ J(8)) (emphasis in original).

    D.   <u>Analysis</u>

        1.  Failure to Exhaust

Plaintiff represents in his Complaint that he filed a Step I administrative grievance regarding the upcoming transfer from RC to WCC on September 22, 2020, the day of the announcement. (ECF No. 1, PageID.5, 19). Two days later, he received notice his grievance was rejected as "[t]he **content** of Department-

wide policy and Director's Office Memoranda are **not grievable per PD 03.02.130**." (*Id.*) (emphasis added). On September 25, 2020, Plaintiff submitted a set of questions regarding the impending transfer to the Warden's Forum Representative. (*Id.* at PageID.6, 20). Approximately a week later, he was informed that the questions were raised during a forum meeting; Plaintiff did not receive Defendant DeAngelo's responses. (*Id.*).

Defendants' exhaustion argument is based on Plaintiff's failure to file a Step II or III grievance appeal following the rejection of his Step I grievance. Defendants place primary reliance on *Young v. Prison Health Servs.* to support their position that dismissal of Plaintiff's action is appropriate. 2017 WL 9470707 (E.D. Mich. June 1, 2017). Defendants' reliance on *Young*, however, is misplaced as the instant action is clearly distinguishable. In *Young*, the parties' summary judgment motion was granted because Plaintiff failed to file a Step III grievance appeal following the denial of his Step II grievance as "untimely." *Id.* at *4. In the instant action, Plaintiff's Step I grievance involved the content of a policy and was denied as "non-grievable" as reflected in the MDOC September 23, 2020 Grievance Rejection Letter. (ECF No. 25, PageID.181). This distinction is crucial as per the MDOC's own policy, and as explained in controlling Sixth Circuit precedent, plaintiffs are not required to exhaust the three-step MDOC administrative grievance process when their issue is rejected as non-grievable.

10

*Blackburn*, at * 4 (citing *Bauman*, 2017 WL 7050280, at *4 ("reversing district court ruling that plaintiff had failed to exhaust claims where the grievance was rejected as non-grievable by MDOC because it grieved the content of a policy or procedure")); *George v. Whitmer*, 2021 WL 2349319, at *5 (E.D. Mich. Apr. 13, 2021).

Based on the controlling MDOC Policy, case law, and submitted evidence, the undersigned is persuaded Plaintiff was not required to exhaust the three-step grievance process. Thus, the undersigned **RECOMMENDS** Defendants' motion for summary judgment on the basis of failure to exhaust be **DENIED**.

2. Eleventh Amendment Immunity

Plaintiff sued Defendants in both their individual and official capacities. Defendants make a fleeting attempt to claim that, as MDOC employees, they are entitled to Eleventh Amendment immunity from Plaintiff's claims when sued in their official capacities. However, Defendants fail to appreciate an important nuance in regard to Eleventh Amendment immunity pursuant to controlling case law—lawsuits against officials for declaratory and/or injunctive relief are not prohibited.[1] *See McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000); *Wolfel v. Morris*, 972 F.2d 712, 719 (6th Cir. 1992).

---

[1] As Defendants have failed to address this important distinction the undersigned will not venture to construct legal arguments on their behalf.

11

The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Where a plaintiff sues a defendant in his or her official capacity, it "is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit, (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), applies. *Long v. Tennessee*, 744 F. App'x 945, 945-46 (6th Cir. 2018).

In the instant action, Michigan has not waived immunity or consented to suit. (ECF No. 22, PageID.121). Nor has Congress expressly abrogated Michigan's immunity. However, it is clear from Plaintiff's complaint, that the only relief sought is injunctive and declaratory in nature.[2] (ECF No. 1, PageID.17-18). Thus, the exception to sovereign immunity under *Ex Parte Young* applies. *See* 209 U.S. 123, 159-60 (1908) (Eleventh Amendment immunity does not bar individual from pursuing declaratory and injunctive relief by way of an official

---

[2] Neither party has addressed the status of the closure of RC and the potential impending transfer of the pertinent inmates. Accordingly, it appears prospective injunctive and declaratory relief is still available and possible in theory.

12

capacity claim against a state official). Consequently, the undersigned **RECOMMENDS** Defendants' motion for summary judgment on the basis of Eleventh Amendment immunity be **DENIED**.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment (ECF No. 22) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 19, 2021

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 19, 2021, by electronic means and/or ordinary mail.

s/Kristen MacKay
Case Manager
(810) 341-7850